## SUPREME COURT.

### ALPHEUS CHAPMAN agt. SILAS ROSE.

The defendant, a farmer, at the request of one M., accepted the agency for the sale of a patent hay-fork. M. produced and signed a paper in duplicate purporting to state defendant's agency, and also a paper printed therewith, and attached thereto, purporting to be an order for forks. Defendant, relying on M.'s statement, signed the part and counterpart. M. left with defendant the counterpart with both their signatures.

The plaintiff, a broker, became holder of a part of one of the instruments which M. took away, and which turned out to be, not an order for forks, but a *promissory note* for $270, purporting to have defendant's signature. The note was payable to M. or bearer, indorsed by him, and before maturity sold to plaintiff for $25 less than its face. Defendant conceded that the signature looked like his, but denied that he ever made the note, and the plaintiff brought a suit upon it.

*Held*, a very clear case of fraudulent practice is made out on the facts against M., whereby the defendant's signature was obtained to a paper of a character which he did not intend to sign. Where the party sought to be charged by his signature shows that he never intended to put his name to any such instrument, that he was deceived as to its actual contents, and that he is not chargeable with laches, negligence or misplaced confidence, which is negligence; he will not be held liable, even to a *bona fide* holder, before maturity. There is no contract where there is no assent. Judgment for defendant.

*Second Judicial Department, General Term, December, 1873.*

THIS suit was brought by Alpheus Chapman, plaintiff, against Silas Rose, defendant, and tried at a circuit at Newburgh in November, 1871, before a jury. Hon. JOSEPH F. BARNARD, J., presided. The jury rendered a verdict in favor of the defendant, and against the plaintiff, for costs. W. Vanamee and Hon. Charles H. Winfield for plaintiff; Hon. W. J. Groo for defendant. On the trial it appeared that on the first day of February, 1871, a person representing himself as Alfred E. Miller came to the defendant, a farmer, at his barn in the town of Warwick,

in this county, and asked him to take an agency for the sale of a patent hay-fork, which defendant finally consented to do. Miller then requested him to sign an agreement creating and accepting the agency, and also a printed order for one hay-fork, which was attached at the bottom. He also requested defendant to execute a duplicate of the agreement and order, which he did; and Miller took one, and defendant kept the other. It was understood that defendant was not to pay for any forks until he had actually sold them. This was all that passed between them. About seven months afterwards, defendant was notified by the plaintiff in this suit to pay a promissory note, purporting to be made by defendant February 1, 1871, for $270, payable to Alfred E. Miller or bearer, seven months after date, and transferred to plaintiff before maturity. Defendant, although conceding that the signature looked like his, denied that he ever made the note, and the plaintiff brought a suit upon it. On the trial Judge BARNARD charged the jury that if they concluded that when Rose signed the orders, he did not intend to execute a note, as the transaction never called for one, it was not a note, and was never, at any time, valid in the hands of any party. The plaintiff appealed to the general term, where the judgment rendered against him was affirmed.

TAPPEN, J.—The defendant, a farmer, was accosted in his barn one day by a person calling himself Alfred E. Miller, on the subject of patent hay-forks, and before they parted, the defendant consented to accept an agency for the sale of the forks. Miller produced and signed a paper in duplicate purporting to state defendant's agency, and also a paper printed therewith, and attached thereto, purporting to be an order for forks. He asked defendant for his signature to the part and counterpart, and defendant signed both instruments, relying on the statement of the contents by Miller, and without reading, but yet scanning, one of the papers. Nothing was said by either party about a promissory

note, and the transaction did not call for one.   Miller took away one of the papers containing defendant's signature to the agreement for agency, and to the other writing or printing thereon, which Miller said was the order for forks. Miller left with defendant the counterpart with both their signatures.   The plaintiff, a broker in Middletown, became holder of a part of one of the instruments which Miller took away, and which turned out to be, not an order for forks, but a promissory note for $270, purporting to have defendant's signature.   The note was payable to Miller or bearer. Miller indorsed it, and before maturity sold it to plaintiff for a price twenty-five dollars less than its face.   A very clear case of fraudulent practice is made out on the facts against Miller, whereby the defendant's signature was obtained to a paper of a character which he did not intend to sign.   He was told it was an agreement and order, that his signature was necessary, and that the papers were both alike; and he produced on the trial the papers which he and Miller signed, and which Miller left with him as an exact counterpart of the paper containing defendant's signature in two places, and which Miller took away.   The plaintiff, who bought the note from the payee, did not make inquiry of the defendant about it, although he had ample time and opportunity between the 9th and 22d of February, during which period he was negotiating with Miller on the subject.   He did, however, inquire as to defendant's responsibility at a bank in the neighborhood, where defendant was known.

The law merchant has been extended to all proper lengths for the protection of innocent holders for value of commermercial paper not matured, but when the instrument is not commercial paper, that protection ceases.   The term commercial paper may be held to include notes, bonds and securities saleable in the market.   In *Foster* agt. *McKennon* (38 *Law Jour.*, *R. N. S.*, 310), a recent case, the full bench of the English common pleas held that defendant was not liable under circumstances similar to, but not so strongly in favor

of the defendant, as the circumstances in this case. And Mr. Justice BYLES remarks in the opinion, that the party sought to be charged never saw the face of the bill which had his indorsement; that its purport was fraudulently misdescribed; that when he signed one thing he was told and believed he was signing an entirely different thing, " and his mind never went with the act." And he distinguishes it from that class of cases when the party, " with knowledge," writes his name across or upon a paper which is fraudulently used or diverted. Where the party sought to be charged by his signature shows that he never intended to put his name to any such instrument; that he was deceived as to its actual contents, and that he is not chargeable with laches, negligence, or misplaced confidence, which is negligence, he will not be held liable even to a *bona fide* holder before maturity. The reason is that there is no contract where there is no assent, and it would be a perversion of terms to hold the instrument in question a contract with all the facts stated. It had neither life, inception, nor validity. A similar conclusion is reached in *Whitney* agt. *Snyder* (2 *Lands.*, 477), where a case is presented, quite similar in some of the facts, to the case at bar; and it is said that as to negotiable instruments, there are some defenses as to which a *bona fide* purchaser purchases at his peril.

Upon the authority of these cases the case at circuit was correctly tried, and the judgment for the defendant must be affirmed with cost.